UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN DEATON, ESQ.,                          :
          Plaintiff,                          :
                         :
          v.                          :        C.A. No. 20-78WES
                         :
STEVEN JOHNSON and LAW OFFICES :
OF STEVEN JOHNSON, P.C.,                :
          Defendants.                     :

**REDACTED MEMORANDUM AND ORDER[1]**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is a motion to remand a removed motion for disbursal of

$▇▇▇▇ for attorneys' fees[2] originally filed in the Providence County Superior Court by Rhode

Island Attorney John Deaton ("Deaton").  Deaton's motion for attorneys' fees arises in an

ongoing state court proceeding captioned In re All Individual Kugel Mesh Cases, Master Docket

No. P.C.-2008-9999.  Invoking federal diversity jurisdiction and disputing that Deaton is entitled

to the fees he seeks, Deaton's co-counsel in the Superior Court proceeding, a Texas attorney,

Steven Johnson, and his law firm, the Johnson Law Firm, (collectively, "JLF") removed

Deaton's motion for attorneys' fees to this Court.  Pursuant to 28 U.S.C. § 1447, Deaton asks the

Court to remand the matter back to the Superior Court.  ECF No. 7.

---

[1] This memorandum and order is a judicial record to which the public has a right of public access deriving from the First Amendment and common law.  Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986).  The parties have jointly requested that the Court redact just the portions of this memorandum and order reflecting dollar amounts in light of a confidentiality order entered in the underlying state court action.  After weighing the public right of access against the interest of the parties, the Court finds the minimal redactions proposed are justified and consistent with applicable law.  Based on the foregoing, this redacted version is issued publicly, while the original memorandum and order remains under seal.

[2] As filed in the Superior Court, the motion for disbursal of attorneys' fees was captioned "Motion to Order Epiq Global, as Successor to Garretson Resolution Group to Disburse the March 11, 2016, Lien of ▇▇▇▇ Dollars." ECF No. 7-2 at 12-19.

The pertinent background may be briefly sketched.  JLF represents claimants alleging injury caused by defective Kugel Mesh implants manufactured by Davol, Inc., a Rhode Island entity that is a subsidiary of C.R. Bard, Inc. (collectively, "Bard/Davol").  Beginning in 2008, JLF chose Rhode Island's Superior Court as the venue to file 176 Kugel Mesh cases.  JLF engaged Deaton as local counsel for these cases.  JLF also filed Kugel Mesh cases in Illinois and other jurisdictions, some of which were transferred to this Court.  JLF engaged Deaton to be trial counsel for one of these cases (Patton v. Davol, Inc., C.A. No. 08-2316ML ("Patton v. Davol")).  In total, JLF was handling over three hundred Kugel Mesh cases and claims (collectively, "JLF Kugel Mesh cases").[3]  For the 176 Superior Court JLF Kugel Mesh clients and for Patton v. Davol, JLF agreed to pay Deaton a percentage of any attorneys' fee JLF might recover based on its contingency fee agreements.  As the settlement of all of the JLF Kugel Mesh cases neared culmination through the creation by the Superior Court of a "Qualified Settlement Fund" ("QSF"), established pursuant to Internal Revenue Code ("IRS") § 468B, the working relationship between Deaton and JLF unraveled.  Since, it has descended into open hostility, spawning multiple lawsuits and arbitration proceedings, principally in Texas.  The gravamen of this multi-front chess match is Deaton's contractual claim of entitlement to share in the attorneys' fees generated by the JLF Kugel Mesh cases, JLF's opposition to paying him anything, as well as Deaton's and JLF's attacks on the quality of their respective work.[4]

---

[3] The persons asserting these claims are referred to as the "JLF Kugel Mesh clients."

[4] Rather than attempting to chronical the "procedural motley," Patton v. Johnson, 915 F.3d 827, 830 (1st Cir. 2019), arising from the Deaton/JLF fee dispute, I direct the reader to some of the judicial decisions that describe it.  See, e.g., Deaton v. Moreno, No. 02-16-00188-CV, 2017 WL 4683940, at *3 (Tex. App. Oct. 19, 2017) (holding court has jurisdiction over controversy, inter alia, between Deaton and Johnson, about whether, and to what extent, either attorney is liable for damages to former client or is owed attorneys' fees); Deaton v. Johnson, No. 05-16-01221-CV, 2017 WL 2991939, at *3 (Tex. App. July 14, 2017) (holding Deaton is subject to personal jurisdiction in Texas and bound by an arbitration clause in JLF attorney representation agreement; dispute between Deaton and JLF may proceed according to its terms).  In addition, JLF has advised the Court, and Deaton does not dispute, that at least one binding arbitration to resolve the overall Deaton/JLF fee dispute is ongoing in Texas.  ECF No. 12 at 5.

Deaton filed his subsequently removed motion for attorneys' fees (hereinafter, "QSF Disbursal Motion") on January 24, 2020, in the Superior Court.  The QSF Disbursal Motion asks the Superior Court to order that $▇▇▇▇▇ – the entirety of a segregated portion of the QSF created for the benefit of JLF Kugel Mesh clients to settle their claims against Bard/Davol (including to pay their attorneys' fees) – be disbursed to him.  According to the Motion, Deaton seeks disbursal not only for his share of the contingency fees earned by JLF in connection with the 176 Superior Court JLF Kugel Mesh cases and Patton v. Davol, but also to reimburse him for the monies he has expended to maintain a post-settlement suit by Rickie Patton against JLF.[5]

JLF removed just the QSF Disbursal Motion (and nothing else pertinent to the ongoing administration of the QSF in In re All Individual Kugel Mesh Cases, Master Docket No. P.C.-2008-9999) to this Court on February 13, 2020.  Deaton promptly responded with a motion to

---

[5] Because it was pending in the District of Rhode Island from May 2017 until September 2019, this Court is intimately familiar with this case, in which Rickie Patton, represented by Lynch & Pine, sued JLF claiming that JLF made misrepresentations to induce him to accept the Kugel Mesh settlement.  Patton v. Johnson, No. 17-259WES ("Patton v. Johnson").  For reasons that did not become clear while it was pending here, Patton v. Johnson never reached the merits of Rickie Patton's claim but instead spawned extensive and labyrinthine procedural skirmishing over arbitration and venue.  Patton v. Johnson, No. 17-259WES, 2018 WL 3655785, at *9 (D.R.I. Aug. 2, 2018) (denying motion to compel arbitration), aff'd, 915 F.3d 827 (1st Cir. 2019); see Patton v. Johnson, No. CV 17-259WES, 2019 WL 4193412, at *3 (D.R.I. Sept. 4, 2019) (transferring venue to the Northern District of Texas).  During these Patton v. Johnson proceedings, more than once I expressed to the parties the Court's bafflement arising from the proportionality disconnect between their procedural fight and what seemed to be the merits of Rickie Patton's case.  Ultimately, the Court transferred Patton v. Johnson to Texas, while puzzling over Patton's sole argument for remaining here – that the presence of Deaton (who seemingly had little to do with the case) in Rhode Island made it an appropriate venue: "[n]or have Plaintiffs presented any explanation for why Deaton is a key witness, nor do they cite anything to elucidate why justice would be served by a venue convenient only to a non-party witness but so inconvenient for the parties."  Patton, 2019 WL 4193412, at *3.  The QSF Disbursal Motion now provides a potentially troubling answer to these mysteries.  In it, Deaton disclosed (to the Superior Court where he filed the QSF Disbursal Motion) that he has been financing, and continues to finance, Patton v. Johnson.  Based on my familiarity with Patton v. Johnson, it appears to me that Deaton's expenditures on Patton v. Johnson now substantially exceed any possible amount that Rickie Patton might recover, with no end in sight.  Only because of JLF's removal of the QSF Disbursal Motion was Deaton's potential "maintenance" of the Patton v. Johnson litigation revealed to this Court.  Cf. Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 905-06 (R.I. 2002).  Because the Court is remanding the QSF Disbursal Motion, these concerns must be sorted out by the Superior Court.

remand, which has been referred to me pursuant to 28 U.S.C. § 636.[6]  ECF Nos. 1 & 7.  For the reasons that follow, the motion to remand is granted.

## I.       BACKGROUND – ONGOING SUPERIOR COURT PROCEEDINGS

In June 2014, Bard/Davol and the JLF Kugel Mesh clients entered into a confidential Master Compromise Settlement, Release and Indemnity Agreement ("MSA"), resolving all of the JLF Kugel Mesh cases, including those in which Deaton is local counsel, as well as Patton v. Davol.  The MSA followed a mediation of the cases presided over by an eminent Rhode Island Superior Court Justice, the Honorable Alice B. Gibney, who is also the judicial officer in charge of the Superior Court docket of Kugel Mesh cases.  The resulting MSA called for the creation by the Superior Court of a QSF, with the money to be deposited with a specified bank and administered by a claims administrator.  The claims administrator would calculate the amounts owed and would ensure that all common benefit fund expenses, medical liens, other appropriate expenses, legal fees and costs were paid, and that net proceeds would be distributed to Kugel Mesh claimants who chose to participate in the settlement.  The purpose of the QSF is strictly cabined – it is for the benefit of JLF Kugel Mesh clients for claims "arising out of, relating to, resulting from, or in any way connected with the Actions,[7] and/or past or present hernia repair product(s) implanted in each claimant . . . that were manufactured . . . by Bard and/or Davol." ECF No. 25-1 at 5, 7.  The MSA provides that the venue for all disputes is the "Superior Court of Rhode Island" and that all "Counsel and/or Co-Counsel hereby submit himself, herself, itself or

---

[6] I am addressing the motion to remand as nondispositive, mindful that, "[i]n this Circuit, all district court rulings that a motion to remand is nondispositive have remained undisturbed by the First Circuit."  Pagidas v. Buster, No. CV 16-390S, 2016 WL 11545018, at *1 n.1 (D.R.I. Nov. 16, 2016); Blue Cross & Blue Shield of R.I. v. Korsen, 746 F. Supp. 2d 375, 379 (D.R.I. 2010) (motion to remand is nondispositive); see also Patton, 915 F.3d at 832-33 (error for a magistrate judge to issue report and recommendation on nondispositive motion).  On the record at the hearing, Deaton and JLF concurred that this motion to remand may be determined by me.  ECF No. 27 at 6-7.

[7] The term "Actions" is defined as "lawsuits . . . or potential lawsuits . . . relating to . . . any hernia repair product manufactured . . . by Bard and/or Davol."  ECF No. 25-1 at 5.

themselves to the personal jurisdiction of the Superior Court of Rhode Island."  ECF No. 25-1 at
25.

Between June 2014 and March 2016, the record does not reveal why there seemed to be a
delay except for the burgeoning dispute between Deaton and JLF over Deaton's share of the JLF
Kugel Mesh attorneys' fees.  The dispute bubbled over with the filing by Deaton's law firm in
the Superior Court on March 7, 2016, of a motion to compel JLF to disclose "settlement monies
and allocations," as well as a "Motion to Enforce Attorneys' Lien," which Deaton claimed was
$███████.  ECF No. 12-2 at 2, 23.  A hearing on Deaton's motion was held on March 11, 2016,
before Justice Gibney.  At the hearing, Deaton threatened to move to vacate the settlement on
behalf of Rickie Patton unless Deaton's right to make a claim to a portion of the attorneys' fees
to be paid pursuant to the MSA was protected.  Overruling JLF's ham handed attempts to force
Deaton's withdrawal from the cases,[8] Justice Gibney ruled that, "[Deaton] is the attorney of
record before me.  He has not withdrawn."  ECF No. 15-1 at 23; see also ECF No. 15-1 at 12
("As far as this Court is concerned, Mr. Deaton is a part of this case.").  Noting her familiarity
with the work performed by Deaton and JLF in connection with the mediation of the JLF Kugel
Mesh cases that she conducted, Justice Gibney stated that she would not be inclined to foreclose
Deaton from earning his share of JLF's attorneys' fees based on her observation of his
contribution to the settlement; she ruled that "some amount needs to be put in escrow," not only
to allow the fee calculation to be completed, but also, potentially, to await the outcome of a "civil
action" in which "[Deaton and JLF] need to square off against each other."  ECF No. 15-1 at 21-
23, 26.

---

[8] JLF had fired Deaton as local counsel and tried to procure notices from every claimant that Deaton was discharged
and that his appearances should be withdrawn.  ECF No. 15-1 at 8-12.

Following an off-the-record chambers conference with Justice Gibney, id. at 27, JLF, its "co-counsel," the JLF Kugel Mesh clients, and Bard/Davol filed a Stipulation in the Superior Court.  The Stipulation recites that the QSF will be established by order of the Superior Court and "shall remain subject to the continuing jurisdiction of [the Superior] Court," pursuant to the applicable IRS regulations.  ECF No. 12-1 at 3.  The Stipulation provides that the claims administrator "shall only make payments [out of the QSF] to the Claimants and any entities asserting a claim of subrogation, as specified in [the Stipulation] and according to the terms set forth in the [MSA]," including that it shall pay attorneys' fees only "to the extent that attorneys' fees are to be paid as part of the Claimants' obligation under existing contingency fee agreements."  ECF No. 12-1 at 4.  All such payments are to be made "upon Court approval upon the joint motion of Claimants' Counsel and [Bard/Davol]."  ECF No. 12-1 at 8.  The Stipulation requires the claims administrator to send monthly QSF statements to JLF and to Bard/Davol. ECF No. 12-1 at 9.

In reliance on the Stipulation and her prior rulings, on March 14, 2016, Justice Gibney issued an Order ("the QSF Order") establishing the QSF pursuant to the MSA, but providing that the claims administrator must segregate $▮▮▮▮ of the QSF, which may be distributed only "upon further order of [the Superior Court]," as well as requiring that Deaton must receive the previously requested (and withheld) information regarding the JLF Kugel Mesh case settlements on which his fee calculation would be based.  ECF No. 7-2 at 8-10.  For reasons not elucidated on the record, Justice Gibney's QSF Order contains no finding or determination that the segregated portion of the QSF is subject to an "attorneys' lien."

As far as the record before me reveals, the QSF, including the segregated $▮▮▮▮ portion, was administered without incident for almost four years.  Then, on January 24, 2020,

6

with the Deaton/JLF battle over attorneys' fees raging in Texas, Deaton filed his QSF Disbursal

Motion in the Superior Court.  He captioned it as "Motion to Order Epiq Global, as Successor to

Garretson Resolution Group to Disburse the March 11, 2016, Lien of ███████ Dollars."

ECF No. 7-2 at 12.  In the QSF Disbursal Motion, Deaton argued that he still lacks complete

information about the disposition of a few of the 176 JLF Kugel Mesh cases for which he acted

as local counsel but believes that his share of the JLF attorneys' fees for the Rhode Island

Superior Court cases should be $███████, or more depending on what the missing information

reveals.  Deaton also asserted that he is entitled to two-thirds of the Rickie Patton Kugel Mesh

contingency fee, which he averred comes to $███████.  In total, Deaton asked for disbursal

from the segregated portion of the QSF of at least $███████ for attorneys' fees based on legal

work he did on JLF Kugel Mesh cases.  On its face, this portion of Deaton's Motion appears to

seek attorneys' fees that are "to be paid as part of the Claimants' obligation under existing

contingency fee agreements."  See ECF No. 7-2 at 5.  JLF argues that Deaton is entitled to none,

or no more than a fraction, of these fees because of his breach of his contractual duty to JLF.

        In addition to seeking to recover fees for his own legal work based on the "existing

contingency fee agreements" in the JLF Kugel Mesh cases, Deaton's Motion also seeks

reimbursement from the segregated portion of the QSF of an additional $███████; this

represents the fees Deaton alleges he has incurred "throughout the representation" of Rickie

Patton in Patton v. Johnson.[9]  ECF No. 7-2 at 6.  Deaton further claimed that the cost of paying

for Patton v. Johnson, now continuing in Texas, will grow and "will exceed . . . $███████[,]"

---

[9] This claim is for the cost of the legal work done by others.  Deaton did not perform any legal work on Patton v. Johnson, at least not while it was pending in this Court or in the First Circuit.  As noted, it was a shock for this judicial officer to learn that a case that had been prosecuted before me with such irrational intensity was actually being financed by an attorney (Deaton) who had his own dispute with the defendants in the case (JLF).  See supra n.4.

supporting his claim to the entirety of the segregated portion of the QSF.  Id.  JLF argues that the

Patton v. Johnson-based claim – for a total of $⬛⬛⬛ – does not constitute "attorneys' fees .

. . to be paid as part of the Claimants' obligation under existing contingency fee agreements,"

which is a predicate to disbursal from the QSF.  JLF labels as frivolous Deaton's argument that

he is entitled to disbursal from the QSF for maintenance of Patton v. Johnson.

In response to Deaton's filing of the QSF Disbursal Motion, Bard/Davol appeared in the

Superior Court to assert its interest in the proceedings; its request that all filings be sealed was

granted by Justice Gibney.  ECF No. 14-1.  For its part, JLF filed a motion to intervene arguing

that it needed to be deemed a party defendant in connection with Deaton's QSF Disbursal

Motion so that it would be recognized as having standing to represent its interest in opposing the

Motion.  ECF No. 14 at 2.  As soon as the intervention motion was granted, ECF No. 14-1, JLF

immediately removed the QSF Disbursal Motion (captioned as Deaton's claim against JLF) to

this Court.

At the hearing on the instant motion to remand, the Court questioned the parties

regarding who or what – other than Deaton and JLF – has an interest in the segregated $⬛⬛

portion of the QSF.  In response, JLF's supplemental memorandum concedes that the JLF Kugel

Mesh clients retain an interest; Deaton's response does not dispute that conclusion.  ECF No. 22

at 4; ECF No. 26.  Authenticated by his declaration, Steve Johnson submitted a copy of a report

received by JLF from the QSF claims administrator, which reflects "that the $⬛⬛ that was

'segregated' was allocated proportionately to settlement funds . . . irrevocably designated to

resolve clams brought by clients who participated in the settlement."  ECF No. 25 at 2; see also

ECF No. 25-4.  Based on this averment and the attached report, it is clear that there are now

ascertainable sums in the segregated $⬛⬛ portion of the QSF owed to JLF Kugel Mesh

clients, for the common benefit fund, for other case expenses and holdbacks, for the claims administrator's expenses, and for attorneys' fees.  Specifically, the amount calculated by the claims administrator for "Net Attorney Fees" based on the contingency fee agreements is only $███████, with the balance of the segregated $███████ portion of the QSF allocated to an array of other stakeholders, most importantly to the JLF Kugel Mesh clients.  ECF No. 25-4 at 1. The claims administrator's report also establishes that no residual portion of the QSF is allocated for reversion to Bard/Davol.

## II.      STANDARD OF REVIEW AND APPLICABLE LAW

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a) (emphasis added).  A "civil action" in this context requires a separate suit that is not ancillary, incidental, or auxiliary to a suit in state court.  Ohio v. Doe, 433 F.3d 502, 506 (6th Cir. 2006); LaFlamme v. HSBC Mortgage Svs., No. 10-10680-GAO, 2010 WL 2639874, at *1 (D. Mass. June 24, 2010) (the "term 'civil action' [in §1441(a)] has been interpreted to require a separate suit that is not supplementary, ancillary, or incidental to a state court action"); see Armistead v. C & M Transp., Inc., 49 F.3d 43, 46 (1st Cir. 1995) (supplementary superior court proceeding remanded in part because it did not independently qualify as a removable "civil action" under 28 U.S.C. § 1441(a)) (citing Barrow v. Hunton, 99 U.S. 80, 82 (1879) (petition was "substantially a continuation" of the original state court suit and not removable to federal court) and First National Bank v. Turnbull & Co., 83 U.S. (16 Wall.) 190, 193 (1873) (where a proceeding is "only auxiliary and incidental" to a state court action, it cannot be removed)).  If a portion of an

ongoing state matter is removed, whether it must be remanded turns on whether the portion can

be considered separate and independent from the original action.  Fox & Horan v. Beiny, No. 92

Civ. 2067 (LJF), 1992 WL 168261, at *1-2 (S.D.N.Y. June 29, 1992).  If the issue removed is

inextricably linked to the state court action, despite the federal court's "unflagging obligation" to

exercise jurisdiction, the federal court must remand.  Id. (internal quotation marks omitted).

"Whether a state action was properly removed to federal court is a question of federal

jurisdiction."  Int'l Coll. of Surgeons v. City of Chicago, Ill., 91 F.3d 981, 987 (7th Cir. 1996),

reversed on other grounds, 522 U.S. 156 (1997) (despite parties' failure to address issues with

removal, whether court has subject matter jurisdiction cannot be waived); see generally Garcia v.

Century Surety Co., 71 F. Supp. 3d 1184, 1186 (D. Colo. 2014) (claim that case does not

constitute a civil action under § 1441(a) implicates federal court's subject matter jurisdiction).

The party seeking to remove a case to federal court must shoulder the burden of demonstrating

the existence of federal jurisdiction.  Cardillo v. Cardillo, 360 F. Supp. 2d 402, 414 (D.R.I.

2005).  "The removal statute, moreover, should be strictly construed, and any doubts about the

propriety of removal should be resolved against the removal of an action."  Id. (internal

quotation marks omitted).  Federal law also governs whether a proceeding is deemed to be a

"civil action" that is removable pursuant to § 1441(a).  Quinn v. Book Named "Sixty Erotic

Drawings From Juliette", 316 F. Supp. 289, 292 (D. Mass. 1970); see also Scanlin v. Utica First

Ins. Co., 426 F. Supp. 243, 246 (M.D. Pa. 2006) (citing Harrison v. St. Louis & S.F.R. Co.,

232 U.S. 318, 329 (1914) ("as the right given to remove by the United States law is paramount, it

results that it is also of the essence of the right to remove, that when an issue of whether a prayer

for removal was rightfully asked arises, a Federal question results which is determinable by the

courts of the United States free from limitation or interference arising from an exertion of state power")).

Tacitly accepting that what JLF removed constitutes a "civil action," Deaton's motion to remand relies on Davol's status as a Rhode Island entity, taking the position that Davol is a party to the "civil action," aligned against him as a diversity-busting defendant, so that this is not an action "of which the district courts of the United States have original jurisdiction."[10]  28 U.S.C. § 1441(a); see also Lawrence Builders, Inc. v. Kolodner, 414 F. Supp. 2d 134, 137 (D.R.I. 2006). The remand motion also argues that the "civil action" that has been removed was really initiated by the 2016 filing by his law firm in the Superior Court of the motion to compel and to enforce an attorneys' lien, which culminated in the entry of the 2016 QSF Order.  Therefore, the essential predicate to federal jurisdiction – that the removal notice must be "filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based" – is missing.  28 U.S.C. § 1446(b)(1).  Deaton did not argue that the QSF Disbursal Motion does not constitute a "civil action."

In response, JLF concedes the Bard/Davol were served with and responded to Deaton's QSF Disbursal Motion (by asking that all filings be sealed) but counters that considering the citizenship of Davol would amount to fraudulent joinder in that Deaton has not asserted any claim against Davol for attorneys' fees and Davol no longer has any residual interest in the segregated portion of the QSF.  See Kolodner, 414 F. Supp. 2d at 137 (when claimant seeks no relief from non-diverse party, court finds that "[a] party fraudulently joined to defeat removal . . . is disregarded in determining diversity of citizenship") (quoting Polyplastics, Inc. v. Transconex,

---

[10] The removal statute also requires that, when removal is solely under § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A). Bard/Davol were served with both Deaton's 2016 motion to enforce attorneys' lien and his 2020 QSF Disbursal Motion.  They have not consented to removal.

Inc., 713 F.2d 875, 877 (1st Cir. 1983)).  As to timing, JLF argues that neither it nor Deaton

became "parties" to the state court proceeding until Deaton filed the QSF Disbursal Motion and

JLF's responsive motion to intervene was granted.  Last, JLF contends that the foundational

requirement that a removable dispute must be a "civil action" is waived by Deaton's failure to

make the argument.

Focusing first on Deaton's arguable waiver, and mindful that "the federal bar to

entertaining satellite elements of pending state suits and judgments clearly remains intact as the

sensible judicial rule[,]" the Court *sua sponte* questioned whether the matter removed amounts to

a § 1441(a) "civil action."  Armistead, 49 F.3d at 46 (internal quotation marks omitted).  In

proceeding *sua sponte*, the Court focused on the clarity of the applicable principles, which

establish that this question must be addressed without regard to whether it is raised by the

parties.  See 28 U.S.C. § 1447(c) (lack of subject matter jurisdiction over removed matter may be

raised by court at any time).  That is, if the matter removed does not constitute a "civil action,"

federal subject matter jurisdiction is lacking and the matter must be remanded.  Armistead, 49

F.3d at 46, 48; see generally Garcia, 71 F. Supp. 3d at 186.  Based on these principles, the Court

holds that JLF's waiver argument is of no force; the lack of subject matter jurisdiction is not

waivable.  See Int'l Coll. of Surgeons, 91 F.3d at 987.

Turning to the merits, whether a removed matter is a "civil action" depends on whether

the claim is "[a] suit which is merely ancillary or supplemental to another action"; if so, it

"cannot be removed from state to federal court."  Conn. Bank of Commerce v. Republic of

Congo, 440 F. Supp. 2d 346, 350 (D. Del. 2006).  Whether a matter is ancillary or supplemental

requires an examination of the parties and the issues in the removed matter:

> To be removable, an action must be independent, not supplementary or incidental
> to another action.  It must be practically severable, so as not to do practical

12

> violence.  It must not be a mere mode of execution or of relief, inseparably connected with the original judgment or decree; but a supplemental proceeding [which] in fact involves an independent controversy with some new and different party.  The mere fact that a controversy had its origin in a state action does not require remand; the issue is whether it is a separate suit.

Mid-century Ins. Co. v. Philadelphia Indem. Ins. Co., No. 3:11-CV-2835-N, 2012 WL 12358929, at *3 n.8 (N.D. Tex. June 12, 2012) (internal quotation marks and citations omitted).

For example, in Davenport v. Hamilton, Brown & Babst, L.L.C., 624 F. Supp. 2d 542 (M.D. La. 2008), the court refused to remand a petition of intervention seeking an allocation of a fixed fund of attorneys' fees among class action counsel.  Id. at 543-44, 546-47.  It found that the petition amounted to a new and separate civil action because "[t]his dispute is separate and distinct from the issues in the underlying litigation."  Id. at 546.  In reaching this conclusion, the court emphasized that the outcome of the removed issue "will not change the plaintiffs' recovery."  Id.  Similarly, in Scanlin, the court held that the question must turn on whether the issue presented was "completely different and separate from the central issue in the state court proceeding" or whether it would require the interpretation of an order previously entered by the state court, as well as whether the sparring parties were the same as in the state court, which suggests that the removed matter is merely ancillary to, or a continuation of, the prior state case.  426 F. Supp. 2d at 248-50.  Also instructive is Fox & Horan, in which the removed matter was a motion for attorneys' fees filed by counsel for the plaintiff in an ongoing state court action for an accounting of a trust.  1992 WL 168261, at *1.  The federal court found that the fee motion was "inextricably linked" to the state court action because the underlying action had been before the state court for "the last nine years" and the motion was based on the attorneys' work in the state court action; it held that the motion was an "unsettled remnant of an old" controversy, thus

"ancillary to the [state court action] and not subject to removal" under 28 U.S.C. §1441.  Id. at

*2 (emphasis added) (internal quotation marks omitted).

Applying these principles, federal courts have accepted jurisdiction over removed

proceedings for garnishment or to enforce a judgement.  E.g., Randolph v. Employers Mut. Liab.

Ins. Co. of Wis., 260 F.2d 461, 463 (8th Cir. 1958) ("garnishment proceeding after final

judgment is a civil action within the meaning of § 1441(a)"); Garcia, 71 F. Supp. 3d at 1187-88

(garnishment is separate and independent action, and properly removed); Weiner v. Blue Cross

of Maryland, Inc., 730 F. Supp. 674, 678 (D. Md. 1990), aff'd sub nom. Weiner v. Blue Cross &

Blue Shield of Maryland, Inc., 925 F.2d 81 (4th Cir. 1991) (enforcement of Florida judgment in

Maryland is procedure that requires initiation of independent action).  By contrast, courts

generally hold that "[m]otions aren't removable."  Kuznar v. Kuznar, 775 F.3d 892, 895 (7th Cir.

2015) (rejecting attempt to remove a summary judgment motion); Walker v. Gaetz, No. 16-cv-

00569-SMY, 2016 WL 4523882, at *2 (S.D. Ill. Aug. 29, 2016) (remanding where notice of

removal "improperly seeks removal of several motions challenging state court orders").

Nevertheless, the inquiry must be one of substance, not form, in that the federal court is not

bound by the title that the state court has appended to the proceeding.  Davenport, 624 F. Supp.

2d at 546 ("the court should evaluate both the separate character of the sought-to-be-removed

'civil action,' as well as the other side of the coin-its connection to the overall litigation").

## III.    ANALYSIS

I find that the QSF Disbursal Motion is not a removable "civil action."  Far from being a

separate, independent claim, the Motion amounts to the latest chapter – a quintessential

"continuation" – of the ongoing Superior Court proceeding.  The Motion raises an issue – how

much of the segregated portion of the QSF is Deaton entitled to be paid for his share of the

14

attorneys' fees from the JLF Kugel Mesh cases – that is inextricably intertwined with the proceedings over which the Superior Court has already presided, including ordering discovery and issuing preliminary rulings about Deaton's fee entitlement.  Further rulings on the issue would require the interpretation of these orders.  Scanlin, 426 F. Supp. 2d at 248-49 (issue is not separate civil action if, among other things, its resolution requires "interpretation of an order previously entered by the state court") (citing Richmond v. Allstate Ins. Co., 624 F. Supp. 235, 237-38 (E.D. Pa. 1985)).  The Motion directly implicates and threatens "violence" to the interests of the JLF Kugel Mesh clients and the other persons and entities still waiting to be paid from the segregated portion of the QSF, none of whom are "parties" to the Motion in this Court.  Mid-century Ins. Co., 2012 WL 12358929, at *3 n.8 (to be an independent "civil action," the matter must be "practically severable," so as not to do "practical violence" to the interests of original parties) (internal quotation marks omitted); Davenport, 624 F. Supp. 2d 546 (dispute is not separate and distinct from issues in underlying litigation if removed issue will change plaintiffs' recovery).  And while Bard/Davol may not have the right to the disbursal of QSF money, the QSF Disbursal Motion clearly impacts their interests in that the Superior Court accepted the Stipulation pursuant to which Bard/Davol retain the right to monitor the QSF administration and to weigh in on all QSF disbursements; confirming their ongoing interest is their appearance in the Superior Court when the QSF Disbursal Motion was filed to ensure that the proceedings would be conducted under seal.

Thus, the QSF Disbursal Motion is far from "an independent controversy with some new and different party," pitting just JLF against just Deaton, to resolve just their claims against each other.[11]  Wimbledon Fin. Master Funds, Ltd. v. Sage Group Consulting, Inc., 17 Civ. 6563 (AT),

---

[11] JLF argues that the dispute would boil down to nothing more than a Deaton/JLF standoff if the Court ignores Deaton's claim to reimbursement for his maintenance of Patton v. Johnson because that part of Deaton's claim is

2017 WL 6034649, at *2 (S.D.N.Y. Nov. 21, 2017) (quoting <u>Buford v. Strother</u>, 10 F. 406, 407

(C.C.D. Iowa 1881)). Rather, it is "inextricably linked[,]" ancillary, incidental, and auxiliary to,

indeed deeply embedded in, the ongoing Superior Court action over which Justice Gibney has

been presiding. <u>See</u> <u>Fox & Horan</u>, 1992 WL 168261, at *2. Further, it implicates the interests of

all the Superior Court parties – JLF, its "co-counsel," the JLF Kugel Mesh clients and

Bard/Davol – who joined in the Stipulation that resulted in the 2016 creation of the QSF. <u>See</u>

<u>Scanlin</u>, 426 F. Supp. 2d at 248-50 (fact that parties interested in removed matter are same as

parties in state court case suggests that removed matter is merely ancillary to state case). JLF

acknowledged as much when it specifically agreed in 2016 not only that the QSF would be

established by order of the Superior Court but also that "the Fund shall remain subject to the

continuing jurisdiction of [the Superior] Court," pursuant to the applicable IRS regulations. ECF

No. 12-1 at 3. Confirming that any disbursals from the segregated portion would require

interpretation of the Superior Court's intent in setting up the QSF with a segregated portion,

Justice Gibney specifically ordered that the segregated $████ may be distributed only "upon

further order of [the Superior] Court." ECF No. 7-2 at 10.

JLF is right that either it or Deaton could have filed a civil action limited to seeking a

declaration of their respective rights pursuant to the fee-sharing contracts between them.[12] If

filed by Deaton against JLF in Rhode Island, JLF could probably remove such an action to this

Court. However, that is not what JLF has removed. Rather, JLF is trying to use the removal

---

frivolous. JLF may well be right that it is frivolous for Deaton to seek reimbursement for financing <u>Patton v.
Johnson</u> out of the QSF. However, if <u>Patton v. Johnson</u> is set aside, the remaining Deaton claim ($████) still
exceeds the amount calculated by the claims administrator as due and owing for attorneys' fees from the segregated
portion of the QSF ($████), thereby reducing the money available to pay the JLF Kugel Mesh clients and
others on their behalf. Further, it is not appropriate for this Court to decide that part of Deaton claim is frivolous
when evaluating whether to remand; rather, the Court must settle the legal uncertainty over the viability of Deaton's
<u>Patton v. Johnson</u> claim in favor of Deaton's characterization of it. <u>Fox & Horan</u>, 1992 WL 168261, at *2.

[12] JLF points out that such a proceeding is underway in Texas. <u>See</u> <u>supra</u> n.3.

statute to bring to this Court a motion that is inextricably embedded in an ongoing Superior Court proceeding regarding the administration of the QSF, in which all interested parties are joined, as to which that court has already ordered discovery and issued other rulings affecting the outcome.  Such a motion is not an independent "civil action" and cannot be removed pursuant to § 1441(a).

A coda: if the Court were to accept that the QSF Disbursal Motion somehow amounts to an independent civil action, Deaton is right that remand would be required by the lack of diversity.  See Fox & Horan, 1992 WL 168261, at *2 n.5 (court does not reach lack of diversity issue based on non-diverse entity's interest in fee motion because removed matter is not a civil action).  Davol has an ongoing interest in the proper administration of the QSF, which establishes it as potentially adverse to, and certainly not aligned with, the interest of its fellow Rhode Islander, Deaton, in the outcome of the QSF Disbursal Motion.  See generally Northeast Fed. Credit Union v. Neves, 837 F.2d 531, 533 (1st Cir. 1988) (citizenship for diversity jurisdiction determined by domicile of the real party in interest).

## IV.   CONCLUSION

Deaton's motion to remand to state court (ECF No. 7) is hereby granted because this Court lacks subject matter jurisdiction over a removed motion that is not a "civil action" pursuant to 28 U.S.C. § 1441(a), as well as because, even if it were a civil action, diversity pursuant to 28 U.S.C. § 1332 is lacking because a Rhode Island individual (Deaton) and a Rhode Island entity (Davol) are aligned adversely to each other.  Accordingly, this matter is hereby remanded to the Providence County Superior Court for further proceedings.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 4, 2020